UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| LINDA GREER,<br><br>        Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. SA CV 17-01316-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Linda Greer ("Plaintiff") appeals from the final decision of the Social Security Commissioner denying her applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

*///*

*///*

*///*

*///*

# I.

# BACKGROUND

In November 2011, Plaintiff filed her initial application for DIB alleging disability beginning on January 31, 2011. See AR 101. On March 11, 2014, an administrative law judge ("ALJ") issued an unfavorable decision. See AR 98-108. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently; to sit and stand/walk for 6 hours each in an 8-hour day with the ability to alternate sitting and standing briefly every 1 to 2 hours; to occasionally stoop, kneel, crouch, crawl, climb stairs and ramps, and balance; with work at unprotected heights and climbing ladders, ropes or scaffolds precluded. See AR 104. Accordingly, the ALJ determined that Plaintiff was capable of performing her past relevant work as a day care owner operator and as a retail store manager. See AR 107. That decision was not appealed and became final.

Thereafter, Plaintiff filed an application for DIB on June 30, 2014, alleging disability beginning January 17, 2013. See AR 240-41. Plaintiff also filed an application for SSI on July 1, 2014, alleging disability beginning on January 31, 2011. See AR 234-39. Both applications were denied at the initial and reconsideration levels. See AR 140-41, 168-69. On November 12, 2015, a hearing before a second ALJ was held in which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. See AR 31-61. On January 27, 2016, the ALJ issued an unfavorable decision. See AR 15-25. In reaching her decision, the ALJ found that Plaintiff had the severe impairment of L4-5 moderate facet arthrosis with minimal anterolisthesis of L4 on L5. See AR 20. The ALJ found no "showing of a changed circumstance material to the determination of disability" sufficient to overcome the presumption of continuing nondisability. AR 23. Accordingly, the ALJ adopted the prior

ALJ's RFC assessment, with several postural modifications.[1] See AR 21-24. Based on the VE's testimony, the ALJ found that given Plaintiff's age, education, work experience, and RFC, Plaintiff could perform her past relevant work as a fast food service manager and a nursery school attendant. See AR 24-25. Thus, the ALJ found that Plaintiff was not disabled. See AR 25.

On June 9, 2017, the Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-7. Plaintiff then sought review by this Court. See Dkt. 1.

## II.

## DISCUSSION

The parties dispute whether the ALJ properly evaluated the opinion of Plaintiff's treating physician, made necessary findings regarding Plaintiff's use of an assistive device, and properly assessed Plaintiff's credibility. See Dkt. 17, Joint Stipulation ("JS") at 6.

**A.    Treating Physician Opinion**

    **1.    Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. §§ 404.1527(c), 416.927(c);[2]

---

[1] The ALJ found that Plaintiff could frequently rather than occasionally balance, and did not include sitting, standing, or walking limitations or the need to alternate between positions in the RFC. See AR 21.

[2] Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n. 2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."). Accordingly,

3

Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. See Lester, 81 F.3d at 830. When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citations omitted); see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other factors. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

**2.   Relevant Facts**

Dr. John Le was Plaintiff's treating physician from April 2014 to May 2015. See AR 496-507, 512-15, 539-41, 565-68, 590-92. Dr. Le provided an

---

throughout this decision the Court cites the Social Security Regulations that were in effect at the time of the ALJ's January 2016 decision.

assessment of Plaintiff's physical capabilities dated October 21, 2015, in which he opined that Plaintiff could sit for less than 2 hours in an 8-hour day and stand or walk for less than 2 hours in an 8-hour day, could sit and stand continuously for only 20 and 15 minutes, respectively, and needed to use a cane or other assistive device when standing or walking. See AR 673-75. Dr. Le found that Plaintiff could never twist, stoop, crouch, climb stairs or ladders, or lift 10 or more pounds. See AR 674-75. Finally, Dr. Le indicated that Plaintiff needed to take unscheduled breaks from work every 10 to 15 minutes and that her impairment would cause her to miss work more than twice a month. See AR 673, 675.

The ALJ gave "little weight" to Dr. Le's opinion, stating that his limitations were "clearly inconsistent with the degree of functional capability demonstrated by the claimant on physical examination" and with her reported daily activities, and that imaging studies showed no "significant physiological abnormality . . . that would result in the severity of the restrictions assessed." AR 24.

### 3. Analysis

First, Plaintiff argues that the ALJ "failed to provide clear and convincing reasons" for rejecting Dr. Le's opinion. See JS at 11. But an ALJ must provide clear and convincing reasons only when rejecting uncontroverted medical opinions. See Carmickle, 533 F.3d at 1164. Dr. Le's opinion was contradicted by two state agency reviewing physicians, who found less restrictive limitations including that Plaintiff could sit and stand/walk for 6 hours each in an 8-hour day, occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and lift and carry up to 20 pounds, and frequently balance and lift and carry up to 10 pounds. See AR 121-22, 162-65, 673-75. Due to this contradiction, the ALJ needed to provide only specific and legitimate reasons for discounting Dr. Le's opinion. See Carmickle, 533 F.3d at 1164.

The ALJ reasonably found Dr. Le's limitations inconsistent with Plaintiff's capabilities as measured in physical examinations. See AR 24. The ALJ noted that Plaintiff's examinations "consistently documented adequate gait and maneuvering ability (without the need for an assistive device)." AR 23. Indeed, Dr. Le's own examinations in April, July, October, and December of 2014 and in April and May of 2015 uniformly found normal gait, see AR 498, 502, 506, 514, 567, 592, despite his assessment that Plaintiff required a cane, could stand continuously for only 15 minutes and could stand or walk less than 2 hours a day total, see AR 673-74.[3] Plaintiff's February 2014 emergency treatment examination, which the ALJ summarized as showing "[n]o significant findings," revealed normal motor, sensory, and reflex tests and full range of motion without tenderness in the extremities. See AR 22, 334. The ALJ also noted neurologist Dr. John Chen's July 2015 findings, which included normal coordination with heel-knee-shin testing showing "no evidence of dysmetria," strength of 5/5 in the upper extremities on the motor exam, and intact sensation in all extremities. See AR 23, 414-15. Likewise, the ALJ noted that Plaintiff "demonstrated gait within normal limits" in a September 2015 examination by pain specialist Dr. Shahriar Minokadeh. AR 23, 663. Therefore, substantial evidence supported the ALJ's conclusion that Dr. Le's limitations conflicted with the results of Plaintiff's physical

---

[3] Plaintiff contends that rejecting a physician's medical opinion as inconsistent with his own reports constitutes an impermissible substitution of the ALJ's lay opinion for that of the medical experts. But "[a]n ALJ may properly reject a physician's opinions that are internally inconsistent or inconsistent with the physician's treatment notes." Richardson v. Astrue, No. 11-9493, 2012 WL 3150595, at *2 (C.D. Cal. July 31, 2012) (citing Morgan, 169 F.3d at 603); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding "incongruity" between treating physician's assessed limitations and her own medical records a "specific and legitimate reason for rejecting [treating physician's] opinion").

examinations, and the ALJ properly provided a specific and legitimate reason to discount Dr. Le's opinion.

The ALJ also properly found that Plaintiff's imaging studies did not support Dr. Le's severe limitations. See AR 24. A March 2014 x-ray of Plaintiff's lumbar spine showed "no definite acute abnormality." AR 361. Plaintiff's July 2015 lumbar spine MRI revealed "moderate facet arthrosis" at L4-L5 "associated with minimal anterolisthesis" and a "tear of the posterior annulus fibrosis" at L1-L2, but "no significant bulge or protrusion" and normal caliber of the central canal and foramina.[4] AR 418. The mild results of these imaging studies constitute an additional specific and legitimate reason to discount Dr. Le's opinion. See Batson v. Comm'r of Soc. Sec. Admin, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings.") (internal citation omitted).

The ALJ further stated that Dr. Le's limitations were inconsistent with Plaintiff's daily activities but cited no supporting evidence. See AR 24. The Commissioner cites the prior ALJ's decision about Plaintiff's daily activities, which cites to evidence not before this Court. See JS at 23; AR 107. Given that

---

[4] Plaintiff argues that the ALJ mischaracterized the MRI findings as insignificant because the ALJ relied on the MRI in step two of the five-step analysis to find that Plaintiff had a severe impairment. See JS at 14. The Court disagrees with Plaintiff's analysis. The inquiry at step two allows for a nonseverity finding only where the impairment has "no more than a minimal effect on an individual's ability to work." Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). But with respect to the ALJ's RFC determination at step four, a severe impairment does not necessarily "correspond to limitations on a claimant's ability to perform basic work activities." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228-29 (9th Cir. 2009). Notwithstanding the step two severity finding, the ALJ was permitted to cite to the MRI's mild findings to discount Dr. Le's extensive limitations.

the ALJ provided other specific and legitimate reasons to discount Dr. Le's opinion, this Court need not address the ALJ's reasoning regarding Plaintiff's daily activities.

Because the ALJ provided specific and legitimate reasons to discount Dr. Le's opinion, reversal is not warranted on this ground.

**B.     Use of Assistive Device**

The ALJ noted that the treatment records "document many . . . observations of the use of a cane," but found that "[p]hysical examinations from the period at issue have consistently documented adequate gait and maneuvering ability (without the need for an assistive device)." AR 23. The ALJ's RFC finding did not include use of an assistive device. See AR 21. Citing Social Security Ruling 96-9p,[5] Plaintiff argues that because the record evidences Plaintiff's use of a cane, the ALJ was required to make a finding as to its medical necessity and her failure to do so was harmful error. See JS at 27-29.

To begin with, whether SSR 96-9p applies to the ALJ's decision is at least questionable. SSR 96-9p is entitled "Titles II and XVI: Determining

---

[5] SSR 96-9p provides:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

1996 WL 374185, at *7 (July 2, 1996).

8

Capability to Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work." 1996 WL 374185, at *1. Here, the ALJ found that Plaintiff's RFC allowed for a reduced range of light work. See AR 21. The Ninth Circuit has held that "Ruling 96-9p does not apply to light work." Hodge v. Barnhart, 76 F. App'x 797, 800 (9th Cir. 2003). Plaintiff cites no case law to support a different interpretation of SSR 96-9p or to show that within the Ninth Circuit, evidence of a claimant's assistive device triggers a framework requiring the ALJ to make a finding concerning the device's medical necessity. See JS at 27-30.

Even if the Court assumes that 96-9p applies, the record lacks the medical documentation that would have enabled the ALJ to find an assistive device was medically required. SSR 96-9p requires documentation that "establishes the need" for an assistive device and "describes the circumstances for which it is needed."1996 WL 374185, at *7. Plaintiff cites to her own testimony regarding use of a cane "all the time" and a walker for longer distances. See JS at 27-28. But a claimant's own testimony does not constitute required medical documentation establishing the need for an assistive device. See Marin v. Astrue, No. 11-9331, 2012 WL 5381374, at *4 (C.D. Cal. Oct. 31, 2012) (finding ALJ "justifiably concluded that plaintiff's use of a cane did not warrant a more limited RFC" where only plaintiff's own testimony corroborated her use of a cane). Nor does the fact that various medical providers noted her use of a cane establish the medical necessity of such a device. See, e.g., Cashin v. Astrue, No. 09-161, 2010 WL 749884, at *11 (C.D. Cal. Feb. 24, 2010) (finding physician's observation of claimant's use of cane during examination was not "an objective finding that plaintiff's cane was medically required"); Quintero v. Colvin, No. 13-478, 2014 WL 4968269, at *10 (E.D. Cal. Sept. 29, 2014) ("Mentioning the use of a cane [in physicians' treatment notes] neither established Plaintiff needed the cane to balance or

9

walk, nor described the circumstances for which the cane would be needed."); Flores v. Colvin, No. 14-2096, 2016 WL 2743228, at *14 (E.D. Cal. May 11, 2016) (finding "no medical documentation establishing the need for an assistive device" where all mentions of claimant's cane were "traceable to Plaintiff's self-reports and to his medical sources' observations that he presented with an assistive device.").

Although Dr. Le opined that Plaintiff needed to use a cane, he failed to explain why and under what circumstances it was necessary. On May 13, 2015, Dr. Le referred Plaintiff to Durable Medical Equipment but did not explain why the referral was made. See AR 568. At that same visit, Dr. Le noted normal motor and sensory tests and normal gait. See AR 567. In the physical capabilities assessment, Dr. Le responded "yes" to indicate that Plaintiff needed a cane or other assistive device for standing or walking, see AR 674, but provided no additional explanation as to whether Plaintiff required a cane "all the time, periodically, or only in certain situations" such as for particular "distance" or "terrain." See id.; SSR 96-9p, 1996 WL 374185 at *7. Without a physician "describing the circumstances for which [the cane] is needed," the ALJ could not have found the cane medically necessary. See id.; see also Tripp v. Astrue, 489 F. App'x 951, 955 (7th Cir. 2012) (noting that courts "have required an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary"); Hughes v. Berryhill, No. 17-1983, 2017 WL 4854112, at *14-15 (S.D.W. Va. Oct. 4, 2017) (affirming ALJ's finding that assistive device was not medically required where record contained prescription but no explanatory information describing when device was needed), report and recommendation adopted sub nom. Thompson v. Berryhill, 2017 WL 4849116 (S.D.W. Va. Oct. 26, 2017); Carroll v. Colvin, No. 14-173, 2015 WL 5737625, at *14 (E.D.N.C. Sept. 30, 2015) (finding "no documentation in the record" explaining circumstances in which

10

claimant needed assistive device where physicians circled "yes" and indicated type of ambulatory device in response to inquiry about claimant requiring device).

Substantial evidence supports the ALJ's decision not to find Plaintiff's cane medically necessary or include the use of an assistive device in the RFC finding.[6] As noted above, Dr. Le's own treatment notes consistently found normal gait, see AR 498, 502, 506, 514, 567, 592, Dr. Minokadeh documented gait within normal limits, AR 663, and the emergency treatment report noted that Plaintiff ambulated "on her own," without assistance, AR 334. The ALJ was required to include in her RFC determination only those limitations she found to be credible and supported by substantial evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Hayee v. Comm'r of Soc. Sec., 532 F. App'x 690, 691 (9th Cir. 2013). Thus, the ALJ did not err in declining to find the cane medically necessary or omitting it from the RFC, and reversal is not warranted on this ground.

## C. Credibility Determination

Plaintiff argues that the ALJ improperly discounted Plaintiff's credibility

---

[6] In support of the ALJ's conclusion, the Commissioner notes that Plaintiff's cane was not prescribed, see JS at 29, but the record is less than clear on this issue. Plaintiff told a state agency reviewing physician by telephone that her cane and walker were not prescribed on August 13, 2014, see AR 119, nine months before Dr. Le referred Plaintiff to Durable Medical Equipment, see AR 568. Given the limited probative value of a prescription for an assistive device as to a finding of its medical necessity, this Court declines to address whether Plaintiff's cane was prescribed. See Temores v. Astrue, No. 09-1931, 2010 WL 5175044, at *4 (C.D. Cal. Dec. 14, 2010) ("[T]he absence of a prescription for a cane is not dispositive."); Sullivan v. Comm'r of Soc. Sec., No. 16-186, 2017 WL 1090163, at *9-10 (E.D. Cal. Mar. 22, 2017) (finding prescription did not establish medical necessity of cane); Staples v. Astrue, 329 F. App'x 189, 191-92 (10th Cir. 2009) (finding ALJ erred in relying on absence of prescription to find cane not medically necessary).

11

in considering her subjective symptom testimony. See JS at 30-31. Specifically, Plaintiff contends that the ALJ erred in failing to consider the claimant's "exemplary work history" in the credibility determination. See id.

**1. Applicable Law**

The court engages in a two-step analysis to review the ALJ's evaluation of the plaintiff's symptom testimony. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the plaintiff has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. See id. If the plaintiff meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting the plaintiff's complaints. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (citation omitted). The ALJ may consider, among other factors, a plaintiff's reputation for truthfulness, inconsistencies in his testimony, inadequately explained failures to seek treatment or to follow a prescribed course of treatment, his work record, and his daily activities. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (as amended); Smolen v. Chater, 80 F.3d 1273, 1284 n. 8 (9th Cir. 1996). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second[ ]guessing." Thomas, 278 F.3d at 959.

**2. Analysis**

At her hearing, Plaintiff testified that she had constant disabling pain in her back and right leg. See AR 45-46. She also testified to numbness in the left leg after being "up on [her] feet more than 15, 20 minutes," AR 46, difficulty walking, see AR 38, and needing to lie down frequently, see AR 42. Plaintiff

12

further testified that she was unable to bend, stoop, or grasp due to her back condition, see AR 55-56, and that her pain medication causes difficulty concentrating, see AR 50, 54. The ALJ found Plaintiff's statements about the "intensity, persistence, and limiting effects" of her symptoms "not entirely credible." AR 22. This Court finds that the ALJ gave specific, clear and convincing reasons for discounting Plaintiff's symptom testimony.

First, the ALJ noted that "[t]he medical evidence following [the onset] date does not reflect a consistent degree of functional restriction commensurate with the claimant's allegations." AR 22. The ALJ cited Plaintiff's unremarkable lumbar spine x-ray and the mild MRI results. See AR 22-23. As discussed in Section II.A.3, supra, these imaging studies support the ALJ's conclusion that the medical evidence was inconsistent with Plaintiff's alleged limitations. In contrast to Plaintiff's alleged difficulty maneuvering, the ALJ cited Dr. Le's October 2014 finding that Plaintiff had only moderate tenderness in her leg following a fall that did not affect her ability to walk and get onto the exam table, see AR 498, Dr. Le's similar February 2015 finding of mild tenderness and range of motion in the knees and ankle following a fall, see AR 541, and Plaintiff's "intact motor and sensory function" and resolution of her wrist and elbow conditions following surgical removal of a cyst in her wrist, see AR 372. As discussed supra in Section II.A.3, Dr. Le and Dr. Minokadeh both documented Plaintiff's normal gait. See AR 498, 502, 506, 514, 567, 592, 663. The state agency reviewing physicians each assessed less restrictive limitations than Plaintiff alleged, finding Plaintiff could sit and stand/walk for 6 hours each in an 8-hour day and could occasionally stoop. See AR 121-22, 149-50. Finally, the ALJ reasonably noted the lack of support for Plaintiff's alleged difficulty with concentration. See AR 23-24. Plaintiff reported to Dr. Minokadeh in November 2014 and June 2015 that her pain medication had no side effects. See AR 577, 580. Dr. Le, Dr. Chen, and Dr.

13

Minokadeh uniformly described Plaintiff as alert and oriented without impaired cognition. See AR 414, 497, 501, 505, 513, 540, 566, 577, 579, 581, 591. The ALJ also properly discounted the opinion of treating physician Dr. Steven Long regarding Plaintiff's inability to focus as vague and not supported by the medical evidence. See AR 24, 471-72; Thomas, 278 F.3d at 957 (finding ALJ may reject treating physician's opinion that is "brief, conclusory, and inadequately supported by clinical findings").

Overall, substantial evidence supported the ALJ's conclusion that the medical evidence was inconsistent with plaintiff's allegations. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); see also Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ also permissibly discounted Plaintiff's subjective symptom testimony based on demonstrated improvement in response to a conservative course of treatment. See AR 22-23. The ALJ noted "little treatment for any impairment in 2013" and that subsequent treatment consisted of pain medication and two lumbar epidural steroid injections. Id. Plaintiff reported to Dr. Minokadeh "moderate relief" from the injections and that she was stable on pain medication "with improved function and no side effects." AR 576, 580. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); see also Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); Medel v. Colvin, No. 13-2052, 2014 WL 6065898, at *8 (C.D. Cal. Nov. 13, 2014) (considering prescription pain medication as part of a conservative treatment routine); Gallo

14

v. Comm'r of Soc. Sec. Admin., No. 07-01561, 2010 WL 545848, at *8 (N.D. Cal. Feb. 12, 2010) (describing epidural steroid injections as "conservative treatment"), aff'd, 449 F. App'x 648 (9th Cir. 2011).

The Commissioner notes that in adopting the prior ALJ's RFC finding, the ALJ adopted her reasoning that Plaintiff's daily activities were inconsistent with her subjective symptom testimony. See JS at 34. The Commissioner cites the prior ALJ's decision, id., which cites to evidence not before this Court, see AR 107. As explained supra, the Court need not address Plaintiff's daily activities because the ALJ properly provided clear and convincing reasons to discount Plaintiff's symptom testimony. See supra, Section II.A.3.

Finally, the Court rejects Plaintiff's contention that the ALJ was required to address Plaintiff's "exemplary work history" in assessing her credibility. See JS at 31. An ALJ is not required to discuss the claimant's work history in determining credibility. See Rocha v. Comm'r of Soc. Sec., No. 15-1298, 2016 WL 7034739, at *16 (E.D. Cal. Dec. 1, 2016); see also Smith v. Colvin, No. 11-3045, 2013 WL 1156497, at *7 (E.D. Cal. Mar. 19, 2013) (rejecting claimant's argument that ALJ was required to consider good work history and noting lack of authority "suggesting an ALJ is bound to make a certain credibility determination based on a lengthy or 'good' work history"); Henderson v. Colvin, No. 14-870, 2015 WL 5768934, at *6 (C.D. Cal. Sept. 30, 2015) ("Plaintiff's assertion that his fairly 'consistent and continuous employment for 32 years' is necessarily probative of his credibility is equally unconvincing.").

On appellate review, the Court's role is not to reweigh the evidence supporting or undermining Plaintiff's credibility. Instead, the Court merely asks whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's subjective testimony. See Smolen, 80 F.3d at 1284. When clear and convincing reasons are given, this Court may not engage in

15

second-guessing. See Thomas, 278 F.3d at 959; see also Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). Having relied on the objective medical evidence and Plaintiff's conservative treatment history, the ALJ provided sufficiently specific, clear and convincing reasons for discounting Plaintiff's subjective complaints about the severity of her back and leg pain and the extent to which her impairment caused functional limitations. Thus, reversal on these grounds is not warranted.

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: November 7, 2018

DOUGLAS F. McCORMICK
United States Magistrate Judge